UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>   v.<br><br>ERIC BROWN,<br><br>                Defendant. | Case No. 22 CR 383<br><br>Magistrate Judge Sunil R. Harjani |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Eric Brown's motion to reconsider this Court's detention decision. For the reasons stated below, Defendant's motion [22] is denied and Defendant will continue to be detained in the custody of the United States Marshals pending further proceedings.

**Background**

On August 16, 2020, this Court held a detention hearing on the government's motion to detain Defendant on the basis of a risk of flight and danger to the community. The Court considered sworn affidavits presented by the government, both the government's and defendant's proffer of evidence (which proceeded by agreement), and information in the Pretrial Services Report, which also recommended the Court detain Defendant Brown. After hearing the arguments of the parties, the Court first found that the presumption of detention, which applied in this case under 18 U.S.C §3142(e)(3), had not been rebutted. Specifically, Defendant had not offered sufficient information to rebut the presumption that there were no conditions that could reasonably assure the safety of the community. Alternatively, even if it had been rebutted, the Court determined that the government had met its burden by clear and convincing evidence that Defendant's release posed a danger to the community. While not outcome determinative, the Court also found that the government had not met its burden by a preponderance of the evidence that Defendant's release posed a risk of flight.

Regarding the §3142(g) factors, and in summary, the Court found that the nature and circumstances of the offense (§3142(g)(1)), which involved Defendant's possession of 413 fentanyl pills, combined with the 18 U.S.C. §924(c) charge involving the use of a weapon in relation to a drug trafficking crime, was a serious offense that weighed towards detention. More specifically, fentanyl itself is a particularly dangerous narcotic and armed drug trafficking poses a heighted threat to the public. The Court also considered the weight of the evidence (§3142(g)(2)), and it was given limited weight because Defendant is presumed innocent at this time. Nevertheless, that factor did weigh towards detention as Defendant was found with the 413 fentanyl pills on his person and was seen by a law enforcement officer removing a handgun from a black satchel and placing the handgun at the wheel well of the front driver side of a vehicle. CPD

1

officers later recovered the firearm, which was captured on a police body camera. The government also introduced evidence, via sworn affidavits, that Defendant had been connected to a sale of narcotics that resulted in an overdose death. The Court recognized that the conduct was uncharged, and therefore gave it limited weight, but still considered the evidence as part of Defendant's history and characteristics (§3142(g)(3)) and the danger he posed to the community if released (§3142(g)(4)). Much of Defendant's personal characteristics (§3142(g)(3)) demonstrated a minimum risk of flight, but his criminal history weighed significantly towards demonstrating that his release posed a danger to the community. Defendant's narcotics-related offense convictions occurred in 2012, 2013, 2014, and 2016, showing that he has past convictions for offenses similar in nature to the instant matter. Moreover, the Court recognized a continuous pattern of Defendant being charged and convicted for narcotics possession, serving his term of imprisonment, but once released, continuing to engage in illegal narcotics activity. Next, the Court observed that Defendant had, on at least three occasions, committed offenses while under court supervision or bond. That demonstrated to the Court that Defendant's release conditions had not prevented his involvement in future criminal conduct. Finally, on the danger that Defendant poses to the community if released (§3142(g)(4)), the Court found that Defendant posed a significant danger in light of his repeated narcotics offenses, his prior commission of criminal conduct while on court release conditions, the nature of the charged offense that involved a firearm and a substantial quantity of fentanyl, and the information presented concerning Defendant's involvement in an overdose death. The Court also considered that, even if the presumption of detention was rebutted, the Court can still consider it as a factor weighing against release. *See United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985). After considering all of these factors, the Court concluded that there were no conditions of release that would reasonably assure the safety of the community.

## Discussion

Defendant has filed a motion to reconsider this Court's order of detention. Because Defendant argued that the Court was not made aware of certain facts during the detention hearing, the Court construed the motion as one to reopen the detention hearing. Specifically, Section 3142(f) provides that "[t]he hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. §3142(f); *United States v. Robinson,* No. 20 CR 561, 2020 WL 5979452 (N.D. Ill. Oct. 8, 2020). Thus, the Court held a reopened detention hearing on October 6, 2022 and heard argument from the Defendant and the government on the motion for reconsideration.

*First*, Defendant contended that there was a lack of a nexus between the narcotics discovered on the Defendant and the firearm found in the car, there was no showing that he possessed the narcotics at the same time he possessed the firearm, and thus there was no probable cause for the 18 U.S.C. §924(c) charge. This argument fails for numerous reasons. At the outset, it is not based on any new information. The Court had already considered that the evidence about defendant's possession of a firearm was based on law enforcement surveillance showing him

2

placing the firearm in the wheel well of the car. The Court was well aware that Defendant was found later, away from the car, and the fentanyl was found when his person was searched while in custody at the police station. And that the police body camera only captured the recovery of the gun, and not the placing of the gun in the wheel well. There was no misunderstanding as to these facts at the first detention hearing, and the record reflects none. Next, in considering the §3142(g) factors, the Court is entitled to consider that a grand jury found probable cause and a sufficient nexus to return the 18 U.S.C. §924(c) charge, and the Court need not question the grand jury's probable cause determination at a detention hearing. *United States v. Dominguez*, 783 F.2d 702, 706, n.7 (7th Cir. 1986); *United States v. Clemon*, No. 21 CR 30003, 2022 WL 2756183 (S.D. Ill. Jul. 14, 2022). More importantly, Defendant's argument misses the mark – it is not the Court's role to decide the issue of probable cause at a detention hearing, but rather to consider the nature of the offense and weigh the strength of the evidence in support, which is exactly what the Court did. In connection with that, Defendant attacks law enforcement's ability to observe Defendant placing the gun in the wheel well from a distance and at night, but there was absolutely no evidence presented at the reopened detention hearing on this point, but rather conclusory assertions. Thus, there is nothing new for the Court to consider. *See United States v. Romero*, No. 22 CR 40, 2022 WL 3210486 (N.D. Ind. Aug. 9, 2022) (denying motion to reconsider because no new information was presented by defendant). Overall, the Court properly considered all the facts and circumstances in weighing the nature of the charged offense and also the strength of the evidence. The Court will also note that at the reopened detention hearing, the government offered additional information that actually made the case for detention even stronger. The government introduced Facebook messages from an account attributed to Defendant in which he was offered a firearm for sale well before the charged incident. A picture of that firearm was sent to Defendant through the messaging app. The government presented the Court with that image along with the image of the firearm recovered from the wheel well of the car on the night of the incident – the images show the same firearm. Although the serial number of the firearm cannot be read, the Facebook messaging communications provide even stronger evidence that the weapon found in the wheel well of the car was placed there by the owner of the firearm – Defendant – while he was in possession of the fentanyl pills.

*Second*, Defendant challenges the evidence proffered by the government that connects him to the alleged overdose death of W.M. This evidence was in the form of sworn affidavits attached to search warrant applications submitted in the government's investigation. Once again, Defendant's arguments are a repeat of those made at the first detention hearing. At the outset, it was crystal clear to the Court that this was uncharged conduct. Also, contrary to Defendant's assertions, the Court was aware that Defendant's alleged involvement in the overdose death of W.M. was a completely different event than the charged offense, involved a different narcotic, that Defendant was not the individual that is actually alleged to have sold the narcotic, and that the government's evidence consisted of only sworn affidavits of a law enforcement officer discussing Facebook messages from an account attributed to Defendant. The Court is well aware that these Facebook messages alone are likely insufficient to result in any conviction at a trial. However, the Facebook messages presented some evidence that Defendant arranged for a runner to deliver narcotics to W.M. on the day of her death and also showed communications about prior, direct sales of narcotics to W.M. before this overdose death. The Court is obligated under §3142(g) to

consider the danger this defendant will pose to the community if released, and evidence of uncharged conduct may be considered at a detention hearing, as long as it is properly evaluated and weighed. *See United States v. Gaston*, 21 CR 36, 2021 WL 1170201, at *5-6 (N.D. Ind. Mar. 26, 2021). Because the evidence presented to the Court were only Facebook messages of uncharged conduct, the Court explicitly gave this evidence limited weight in its detention decision, but the Court also need not completely discount it, as Defendant suggests.

*Third*, Defendant alleges that the Court inaccurately determined that he had committed three new offenses while on release conditions, when it was actually only two. In fact, the Court stated that there were *at least* three new offenses while on release conditions. Those three incidents were accurately reflected in the Pretrial Services Report, namely: (1) Defendant was placed on probation on September 28, 2012 but was arrested again on November 30, 2012 for a new offense for which he was convicted; (2) while on the same September 28, 2012 probation, he picked up a new arrest on December 22, 2013, which resulted in another conviction; and (3) Defendant was on parole as a result of a December 22, 2013 arrest, and while on parole was arrested again on February 2, 2016 for another charge which resulted in a conviction. Thus, the Court did not err. Beyond that, and once again, the evidence of Defendant's inability to comply with conditions of release as demonstrated by new criminal conduct while on court supervision became even stronger at the reopened detention hearing. Pretrial Services detailed three more incidents from the Pretrial Services Report that the Court had not stated on the record, namely (4) Defendant was placed on probation as a result of a December 12, 2006 arrest, but committed another offense on April 17, 2008; (5) Defendant was on supervision as a result of a May 28, 2008 arrest and subsequent conviction, but committed a new offense and was arrested on July 18, 2008; and (6) Defendant's February 12, 2016 arrest and subsequent conviction mentioned above actually violated his terms of court supervision in two additional cases – cases arising from arrests on June 15, 2012 and November 30, 2012. As the Court stated, Defendant's repeated, prior violations of his release conditions with new offenses weighed heavily in the Court's decision that no conditions of release could reasonably assure the safety of the community. More specifically, it demonstrated to the Court that prior court supervision and conditions of release had not deterred future criminal conduct by this Defendant, and thus there was no basis to conclude that more release conditions could actually ensure the safety of the community.

*Fourth*, the Pretrial Services Report noted that Defendant had failed to appear on a number of occasions in state court when he was charged for the instant offense, before it was federally prosecuted in this case. The Court essentially gave no weight to Defendant's alleged failure to appear, as the Court accepted counsel's representations at the detention hearing that Defendant had not received the summons notices to appear for the state court proceedings. In the same vein, Defendant asks the Court to consider that he was placed on electronic monitoring by the state court from March 2022 through when he was indicted by a federal grand jury for the instant offense. The Court did consider that a state court had decided to afford him release conditions, and that he is not known to have violated those conditions between March and August 2022. This was considered and weighed against Defendant's prior, dismal history in complying with court release conditions. Furthermore, this Court must consider the federal presumption of detention that applies because of the nature of the offense, and regardless, weigh the factors outlined in 18 U.S.C.

4

§3142(g). In other words, the Court must conduct its own independent analysis under the federal Bail Reform Act and not rely on another judicial officer's assessment of release conditions under Illinois state law. As a result of its own analysis under the applicable federal statute, this Court has reached a different conclusion about Defendant's danger to the community if released.

*Fifth*, Defendant contends that the Court erred when it also found that Defendant had a history of violence or use of a weapon as one of its basis for its detention decision. In support, Defendant states that he does not have a history of violence and has never been convicted for a felony weapons offense. However, Defendant was convicted for misdemeanor unlawful use of a weapon on April 8, 2009. In addition, Defendant also had a misdemeanor attempted battery conviction on July 3, 2008. The Court did not give heavy weight to these convictions given that they were misdemeanors and that defendant was eighteen or nineteen years old at that time, but there was no error. Once again, and contrary to Defendant's claim, the Court need not discard these convictions simply because they are misdemeanors and are older, but rather can take them into account by placing them in the appropriate context.

*Sixth*, Defendant claims that he has rebutted the presumption of detention here because he did not use the weapon during the offense, and that he has no history of violence or history of felony weapon possession. While it does not take much to rebut the presumption under the Bail Reform Act, these statements alone are insufficient to meet Defendant's burden of production. While Defendant may have not brandished the weapon, the evidence shows he possessed a weapon while he also possessed 413 fentanyl pills – the two types of contraband were simply discovered at different times. Moreover, as explained above, Defendant does have criminal convictions for weapons possession and attempted battery, along with multiple, and more recent narcotics convictions for conduct similar to the charge in the instant case, and a whole host of violations of release conditions in state court criminal proceedings as a result of new offenses, many of them narcotics-based offenses. *C.f. Dominguez*, 783 F.2d at 707 (defendant had no criminal record, among other personal characteristics, and that was sufficient to rebut the presumption as to dangerousness).

*Seventh*, Defendant asserts that his last conviction was in 2016 and that he has lead a law-abiding life since his release in 2017. It is true that Defendant's last conviction was in 2016, but that was not his last encounter with law enforcement. Defendant was charged for a narcotics offense in 2018, and has three different arrests for possession of narcotics in 2020. The Court recognizes that these offenses were *nolle prosequi* by the state, but it does add color to Defendant's assertion here. And he continues to have one pending charge for operating a vehicle while intoxicated out of a state court in Indiana. The Court also notes that Defendant has a serious substance abuse history and in the period of time being discussed, he was a regular user of oxycodone, heroin, ecstasy, and cannabinoids. Thus, there is much more context to acknowledge about Defendant's past few years since his release from incarceration, and much of that context continues to weigh in favor of detention.

*Eighth*, Defendant restates his personal characteristics – he is a life-long citizen of Chicago, he has family in the area, he is a father who has a relationship with his children, and he is self-employed with his own business. These familial ties and connections to the community weighed

heavily in the Court's consideration that Defendant had rebutted the presumption as to flight risk, and also that the did not pose an actual risk of flight by a preponderance of the evidence. However, they do not change the result as to his risk of danger to the community if released in light of the other evidence that weigh towards detention.

Finally, Defendant proposed a new third-party custodian in his motion, but that proposed custodian rescinded the offer, according to counsel at the reopened detention hearing. Defendant reverted to the same proposed custodian identified in the Pretrial Services Report. Thus, there was no new information on Defendant's proposed release conditions that could possibly change the Court's calculus on detention.

## Conclusion

Pretrial detention is a serious restriction on an individual's liberty based on charges that have not yet been adjudicated. Nevertheless, the Bail Reform Act requires this Court to properly consider the presumption when it applies, and even then, to sufficiently evaluate and weigh evidence on each of the 3142(g) factors to determine whether there are any conditions that can reasonably assure the safety of the community. For the reasons stated above, the Court finds that there are no such conditions and Defendant's presentation at the reopened detention hearing does not change this conclusion. Defendant's motion to reconsider is denied.

**SO ORDERED.**

Dated: October 17, 2022

_____
Sunil R. Harjani
United States Magistrate Judge